MUNROE v. RAILWAY APPLIANCE CO.

(Circuit Court, N. D. Illinois. E. D. February 2, 1906.)

No. 26,920.

PATENTS—NOVELTY—CAR STARTER.

The Ripberger patent, No. 493,736, for a car starter, although merely for an improvement in such devices, discloses patentable novelty, and is valid. Also *held* infringed.

In Equity. On final hearing.

Frank T. Brown, for complainant.
Banning & Banning, for defendant.

KOHLSAAT, Circuit Judge. This cause is now before the court on final hearing. Complainant brings suit for infringement of patent No. 493,736, granted to Jacob Ripberger and Charles Manne, assignee, on March 21, 1893, for a car starter. Both title and infringement are conceded, and the defense rests wholly upon lack of patentable novel-

ty in view of the state of the art. The one claim of the patent reads as follows:

"The combination, in a car starter, of the lever, A, having a wedge-shaped toe, B, a pair of jaws, D, D', sloited vertically at d, d', and pivoted to each other by a single bolt, E, and a pin, C, that traverses said toe, B, and slots, d, d', and descends within said slots when said lever is depressed, all as herein described, and for the purposes stated."

The device is one of many in the art designed for use in giving cars a start by hand, and then edging them along to the desired position. This requires a tool which can be fixed firmly to the rail when in operation and then easily released from such fixed relation to the rail in order that the car may be followed up and kept in motion. It must be light enough to be readily portable. The patent in suit calls for two flaring jaws with vertical slots in their upper limbs through which a bolt runs in such manner that it may slide up and down in the slots, passing through a hole made in an extension of the part of a lever bar called the "toe" of the bar in the patent. This toe is tapering from the bar to its outer edge for the purpose of acting as a wedge upon the upper portion of the jaws, when pressed down between them. The lower portions of the jaws are pivoted together by a pin running at right angles to the slot and lever handle pin above described. The jaws terminate in actual jaws or clamps, similar to those of the ordinary pincers. When the lower end of the lever is placed against the car wheel, and the handle is pressed down, the toe of the lever operating with the pin in the slots is forced into the narrowing space of the upper limbs of the jaws with the result that they are spread, whereby the lower jaws or clamps are made to grip the rail and hold the device in fixed position so long as required. The lever thus becomes fulcrumed upon the inside of the upper arms. When the lever handle is raised, the grip is released and the starter can be removed to another position at will. The action is the reverse of that of pincers. In the latter the upper limbs are drawn together to cause the lower limbs to grip an object. In this patent, that result is obtained by spreading the upper limbs. Every element of the patent is old.

Defendant makes reference to the De Graw patent, No. 14,154, granted January 29, 1856, for a car starter. Nothing but the drawings appear in the record. It discloses gripping jaws connected upon a common bar or plate by two longitudinal pins. The operation is upon the same principle, but the whole device is different from that of the patent in suit. The patent issued to Underhill, March 14, 1882, for a car starter, No. 255,054, is practically the same as the starter here in suit, lacking only the longitudinal pin which holds the jaws in fixed relations. This is entirely wanting. As a consequence, the lower limbs of the Underhill device are wobbly and uncertain in action. It is evidently a matter of some difficulty to secure them in position to be clamped upon the rail. The device of patent No. 259,-598, granted to Stone, June 13, 1882, for an apparatus for moving cars, discloses the same longitudinal pivoting of the lower limbs of the jaws as that of complainant's device, but lacks the pivot and slots

in the upper limbs of the jaws. The lever is pivoted above the upper limbs of the jaws. In operation it drives the plunger upon which it is pivoted, down upon an arrangement of links pivoted to a slide forming a fulcrum while in the descent they spread the upper arms of the jaws, and cause the lower arms to clamp the rail just as the patent in suit. The starter of the patent issued to Wheeler, January 31, 1873, No. 135,187, consists of an upright frame, having two legs terminating in clamping devices. Those operate upon the wedge principle just as in the patent in suit. The wedges are placed between the upper limbs of the jaws and are pivoted upon a bolt which passes through them respectively into slots in the upper limbs, just as in the device before the court. They are operated without any lever. A rope or chain moves over a drum in the upper frame of the device which, when drawn taut, tilts the whole frame whereby the wedges are driven down just as in the present case. The lower limbs of the jaws are pinioned together, but not by a longitudinal bolt. Both of the pins run at right angles to the inner and outer faces of the upper arms of the jaws. Thus it will be seen that whatever there is of novelty in complainant's device must consist in the use of the lower longitudinal bolt, holding the lower limbs of the clamping jaws in fixed relation to each other when not in use, in combination with a lever handle, pivoted on a separate pivot at right angles thereto, and acting as a wedge.

I find no device in the prior art which combines a lever handle having a so-called toe integral therewith, designed to clinch the clamps upon the rails by a downward pressure, with jaws, the lower limbs of which are held in fixed relation to each other by means of a single pivot, either longitudinal or otherwise. The Wheeler patent attains that fixed relation by means of a transverse pivot, but has no handle. The result obtained by the tilting of the frame of the Wheeler starter might be deemed an equivalent of the handle pressure, were the patent in suit primary. It is not only not primary, but very narrow, if sustainable at all. The Underhill patent which calls for the only lever-handle device in the prior art, lacks only the means for a fixed relation in its lower limbs, as above shown, and is otherwise identical with the patent in suit. It is insisted by complainant that the use of the longitudinal pivot is of great advantage, in that the strain upon the thread and head of the pins or bolts is thus avoided; a position which seems to be sustained by the facts. This, however, is theoretical as it does not appear that complainant has ever manufactured, and far less, put in use the device of his patent, although it was granted almost 13 years ago. He merely selected the pivot arrangement of the Stone patent in place of that found in the Wheeler patent. In doing so he seems to have hit upon a starter which in course of time appealed to defendant. Undoubtedly complainant had the right to withhold the benefit of his discovery, if it be one, from the public for the term of 17 years. It is fair to assume that defendant concluded to put complainant's device into public use, and take his chances of being able to show that complainant had made no invention. Therefore the parties are before the court without any equities other than

complainant's right as owner of the patent. While the invention is very close to the line, yet, considering the advantages of the device of the patent ·in suit over the prior art in respect to its convenient, new and simple arrangement, together with the great advantage which follows slight advance in the "starter" art, I deem the patent possessed of a degree of novelty sufficient to justify the court in sustaining it.

It is therefore ordered that an injunction issue as prayed.